UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------- x

| | |
|---|---|
| *In re* | Chapter 13 |
| Stefan Joseph Lonce, | Case No. 24-22606 (CGM) |
| Debtor. | |

--------------------------------------------------x

**MEMORANDUM DECISION GRANTING THE UNITED STATES
TRUSTEE'S MOTION FOR CONTEMPT**

<u>**A P P E A R A N C E S :**</u>

*United States Trustee*
WILLIAM K. HARRINGTON
Leo O'Brien Federal Building
11A Clinton Avenue, Room 620
Albany, New York 12207
By:    Alicia M. Leonhard

*Attorney for Debtor*
MARC H. FRYBURG
Law Office of M.H. Fryburg
35 Brook Street
Croton on Hudson, NY 10520

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

## Jurisdiction

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a); 28 U.S.C. § 157(a); and the Standing Order of Reference signed by Chief Judge Loretta A. Preska dated January 31, 2012.

This is a "core proceeding" under 28 U.S.C. § 157(b)(2).

## Background

On July 9, 2024 ("Petition Date"), Marc H. Fryburg ("Mr. Fryburg") filed a Chapter 13 petition for relief in this court ("Court") on behalf of Stefan Joseph Lonce ("Debtor").  A hearing on confirmation of the Debtor's Chapter 13 plan was initially scheduled for September 11, 2024.  Mr. Fryburg failed to appear for the September 11, 2024 hearing, and the presiding judge, the Honorable Cecelia Morris (the "Judge") adjourned the hearing (the "Confirmation Hearing") for October 9, 2024. *See* Notice of Adjournment of Hearing Re: Confirmation Hearing, 24-22606-cgm, ECF No. 28.  Notice was sent to all parties in interest (including Mr. Fryburg via email and confirmed through the electronic filing system) listing the date, time, and place of the adjourned Confirmation Hearing. *See id.*  Mr. Fryburg failed to appear for the adjourned Confirmation Hearing—just like the first time.[1]

---

[1] In fact, Mr. Fryburg failed to register for Zoom for both the initial confirmation hearing scheduled for September 11, 2024 and the adjourned Confirmation Hearing scheduled for October 9, 2024.

On October 18, 2024, the chapter 13 trustee ("Chapter 13 Trustee") filed a motion to dismiss ("Motion to Dismiss") for failure to be examined at a section 341 meeting of the creditors, failure to make plan payments, and failure to file required documentation, among other things. *See* Mot. to Dismiss, No. 24-22606-cgm, ECF No. 34. Because of Mr. Fryburg's repeated failure to appear in Court for scheduled hearings, Mr. Fryburg was ordered to appear in person for the hearing on the Motion to Dismiss scheduled for December 4, 2024. *See* Order to Show Cause, No. 24-22606-cgm, ECF No. 36 (directing Mr. Fryburg to appear in person at the December 4, 2024 hearing and show cause why he should not be sanctioned for his failure to attend the Confirmation Hearing).

At the December 4, 2024 hearing, Mr. Fryburg claimed he was "online" for the adjourned Confirmation Hearing. *See* Transcript of Hearing Held on 12/4/24, No. 24-22606-cgm, ECF No. 45. The Court's records confirm that Mr. Fryburg failed to register for Zoom for the adjourned Confirmation Hearing and no appearance by Mr. Fryburg (or any other representative of the Debtor) was made when the Debtor's case was called at the adjourned Confirmation Hearing. At the December 4, 2024 hearing, the Court granted the Motion to Dismiss but retained jurisdiction for further consideration of the order to show cause ("Order to Show Cause"), namely, for further confirmation of Mr. Fryburg's claim that he was on Zoom for the October 9, 2024 hearing. The Court adjourned the hearing on the

Order to Show Cause to January 15, 2025, and explicitly and clearly directed Mr. Fryburg to appear in Court via Zoom on January 15, 2025. In fact, the Judge directed Mr. Fryburg to appear in Court via Zoom on January 15, 2025 several times. *See* Transcript of Hearing Held on 12/4/24, No. 24-22606-cgm, ECF No. 45. Continuing the pattern in this case, Mr. Fryburg again failed to register or appear in Court via Zoom on January 15, 2025, as ordered by the Court.

On January 21, 2025, Mr. Fryburg filed a one-page letter with the Court (the "Letter") alleging that he appeared at "a conference on zoom.com" on October *10*, 2024. *See* Letter from Marc H. Fryburg, Debtor, to Hon. Cecelia Morris, Judge ¶ 1 (Jan. 21, 2025) (on file with the Court). It is undisputed that Mr. Fryburg did not appear at the adjourned Confirmation Hearing that was held on Zoom on October 9, 2024.[2] The Court's records confirm that Mr. Fryburg did not appear (and no appearance by Mr. Fryburg or any representative of the Debtor was made) at the October 9, 2024 Confirmation Hearing; additionally, the Court's records confirm that Mr. Fryburg did not register for Zoom for the Confirmation Hearing. It is also undisputed that Mr. Fryburg did not appear at the January 15, 2025 hearing: The Court's records confirm that Mr. Fryburg did not register for Zoom for the January

---

[2] Mr. Fryburg may have appeared at the adjourned section 341 meeting that was held (but did not go forward) on Zoom on October 10, 2024.

15, 2025 hearing, and no appearance by Mr. Fryburg was noted after his case was called more than once over a three-and-a-half period.

Instead of defending his actions with meritorious justifications, the Letter attempts to place the blame for Mr. Fryburg's repeated nonappearance at scheduled Court hearings on the Chapter 13 Trustee or on the Judge's chambers. *See id.* The Letter complains that Mr. Fryburg "never heard back from anyone in [the Judge's] chambers about the results of th[e] investigation [regarding Mr. Fryburg's appearance at the October 9, 2024 hearing] which is critical with regard to the sanctions." *Id.* While confirmation of Mr. Fryburg's nonappearance at the October 9, 2024 hearing may have been a factor in the determination of sanctions, informing Mr. Fryburg of the same is not critical. The Letter maintains that "Mr. Frost should have known better" because "the contention by Mr. Frost and those acting on his behalf that [Mr. Fryburg] didn't appear on Oct. 10, 2024 is factually false." *Id.* ¶ 3. It is Mr. Fryburg who "should have known better" that his appearance on October 10, 2024 was never in question, but rather, his appearance on October 9, 2024 for the adjourned Confirmation Hearing was the appearance in question. Mr. Fryburg, a practicing attorney, should know that a confirmation hearing is not the same thing as a section 341 meeting of the creditors. In Mr. Fryburg's own words as set forth in the Letter, "[he] made some mistakes in this case, and in a previous bankruptcy case that [he] filed on Mr. Lonces behalf (which was dismissed)." *Id.* ¶ 2.

On January 25, 2025, the United States trustee (the "UST") filed a motion for contempt ("Motion for Contempt") seeking to hold Mr. Fryburg in civil contempt for failure to abide by Court orders relating to his appearance at scheduled Court hearings, and for sanctions in the form of attorneys' fees. *See* Mot. for Contempt, No. 24-22606-cgm, ECF No. 44. The hearing on the Motion for Contempt was scheduled for March 12, 2025 ("Contempt Hearing"). *See* Notice of Adjournment of Hearing, No. 24-22606-cgm, ECF No. 48. On March 11, 2025, at 10:56 p.m. (prevailing Eastern time), Mr. Fryburg filed a two-page affirmation in opposition to the Motion for Contempt (the "Opposition"). *See* Aff. in Opp., No. 24-22606-cgm, ECF No. 52. The Opposition claims Mr. Fryburg "reasonably relied" on an Email (as defined below) informing him that the section 341 meeting of the creditors had been rescheduled for the third time[3] to October 10, 2024, at 12:00 p.m. (prevailing Eastern time), as justification for his failure to appear at the adjourned Court's Confirmation Hearing on October 9, 2024 at 9:00 a.m. (prevailing Eastern Time). *See id.* ¶¶ 2-3. The Email says nothing about the adjourned Confirmation Hearing (or any hearing).

At the Contempt Hearing, Mr. Fryburg failed to appear when his case was called the first two times. Mr. Fryburg appeared on the third call but, due to

---

[3] Like Mr. Fryburg's failure to appear for scheduled Court hearings in this case, Mr. Fryburg repeatedly failed to appear for scheduled section 341 meetings of creditors in this case.

Page **6** of **19**

technological issues on Mr. Fryburg's part, took several minutes to mark his appearance. Once Mr. Fryburg connected to audio, he noted "[his] defense is [that] obviously [he] is not up to date on this technology" which has been in place in Southern District of New York Bankruptcy Courts since at least December 2020. *See* Standing Order signed by Judge Colleen McMahon dated November 30, 2020 (providing that all civil proceedings will be conducted remotely until January 15, 2021); *see also* Standing Order signed by Judge Colleen McMahon dated January 19, 2021 (providing that **all civil proceedings will be conducted by teleconference or videoconference until further order of the Court**). In Mr. Fryburg's own words at the Contempt Hearing, he "may have made a mistake, no question about that."

The Judge read Mr. Fryburg the model rules of professional responsibility ("Model Rules") regarding competence and the comments related thereto, noting a lawyer's duty to keep abreast of changes in the law and the importance of technology to modern law practice. *See* MODEL RULES PRO. CONDUCT R. 1.1 cmt. 8 ("To maintain the requisite knowledge and skill, a lawyer should keep abreast of changes in the law and its practice, including the benefits and risks associated with relevant technology . . . ."). After Mr. Fryburg was read the Model Rules, Mr. Fryburg responded: "I agree with you . . . Again, I agree with a lot of what you said. I think you are absolutely right in certain respects. I made some mistakes in this case. But

here's the thing: I am not going to excuse my mistakes. I am going to explain them. They happened. And again, I apologize for it." Mr. Fryburg provided no further explanation for his repeated nonappearance at scheduled Court hearings in contravention of this Court's orders and the Model Rules. Instead, Mr. Fryburg implied the Court would be "making a big mistake . . . if [it] hold[s] [Mr. Fryburg] in contempt." The Court disagrees.

## Discussion

### I.    Contempt of Court

The Court must consider whether Mr. Fryburg should be held in contempt of court for violating the Order to Show Cause at the continued hearing date on January 15, 2025, or the Court's oral order at the December 4, 2024 hearing. A court injunction combined with 11 U.S.C. § 105(a) provides the basis for a bankruptcy court's civil contempt power. *PHH Mortg. Corp. v. Sensenich* (*In re Gravel*), 6 F.4th 503, 512 (2d Cir. 2021) (citing *Taggart v. Lorenz*, 139 S. Ct. 1795, 1801 (2019)). 11 U.S.C. § 105(a) states that "the [bankruptcy] court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." This statutory power follows the tradition of federal courts imposing civil contempt sanctions to correct non-compliance with their injunctions. *Taggart*, 139 S. Ct. at 1801.

To determine whether a party should be held in contempt for violating a court order, "a court must find that (i) the order the party failed to comply with is clear and unambiguous, (ii) the proof of noncompliance is clear and convincing, and (iii) the party has not diligently attempted to comply in a reasonable manner." *Rushmore Loan Mgmt. Servs., L.L.C. v. Hosking* (*In re Hosking*), 2016 U.S. Dist. LEXIS 3492, at *15 (S.D.N.Y. January 11, 2016). "In the context of civil contempt, the clear and convincing standard requires a quantum of proof adequate to demonstrate 'reasonable certainty' that a violation occurred." *In re* Chief Exec. Officers Clubs, 359 B.R. 527, 535 (2d Cir. 1995). Courts should only resort to civil contempt if there is no "fair ground of doubt" about a party's wrongful conduct. *Taggart*, 139 S. Ct. at 1801. The standard is an objective one: A party's "subjective belief that she was complying with an order ordinarily will not insulate her from civil contempt if that belief was objectively unreasonable." *Id.* at 1797.

### A. The Order to Show Cause and the Court's Oral Order are Clear and Unambiguous.

The Order to Show Cause must be clear and unambiguous to hold Mr. Fryburg in contempt of court for violating it. *Rushmore*, 2016 U.S. Dist. LEXIS 3492 at *15. The Order to Show Cause provided the following terms:

> **ORDERED**, that Marc H. Fryburg, Esq. appear in person before the Honorable Cecelia G. Morris, United States Bankruptcy Judge, in the United States Bankruptcy Court for the Southern District of New York, White Plains Division, 300 Quarropas Street, Courtroom 621, White Plains, New York 10601, on Wednesday, December 4, 2024, at

9:00 a.m., and show cause why he should not be sanctioned for his failure to adequately represent the Debtor; and it is further

**ORDERED**, that sanctions, including, but not limited to, disgorgement of fees and referral to the Grievance Committee, may be imposed.

Order to Show Cause, 24-22606-cgm, ECF No. 36. The Order to Show Cause plainly states that Mr. Fryburg must appear in person at a particular location at a date and time certain and that sanctions, including attorneys' fees and referral to the Southern District of New York grievance committee ("Grievance Committee"), will be imposed if Mr. Fryburg does not comply. The Order to Show Cause is clear and unambiguous.

The Court's oral order directing Mr. Fryburg to appear for the January 15, 2025 hearing reaffirmed the Court's intention to hold Mr. Fryburg in contempt and award sanctions if he did not appear at the next hearing and show cause why he should not be sanctioned. The transcript of the December 4, 2024 hearing shows that the Judge directed Mr. Fryburg on the following not uncertain terms:

> We will adjourn to January 15, 2025 and will absolutely check the record.
>
> I am adjourning to 1/15/25 and we are checking the record.
>
> I am going to retain jurisdiction over Mr. Fryburg and his allegations that he was here on Zoom. If not, I will have you pay $2100.
>
> We are adjourning the Order to Show Cause and dismissing the case. But I am retaining jurisdiction on the dismissal. You can appear by Zoom on January 15th.

Page **10** of **19**

> You will appear by Zoom on January 15th.
>
> See you on January the 15th.

Transcript of Hearing Held on 12/4/24, No. 24-22606-cgm, ECF No. 45.  The Judge plainly directs Mr. Fryburg to appear at the January 15, 2025 hearing on Zoom.  The Court's oral order is clear and unambiguous.

### B. Mr. Fryburg's Failure to Comply with the Order to Show Cause and the Court's Oral Order is Clear and Convincing.

A party's failure to comply with a court's order must be clear and convincing to hold a party in contempt of court.  *Rushmore*, 2016 U.S. Dist. LEXIS 3492 at *15.

Here, the UST submitted evidence that Mr. Fryburg did not appear on Zoom for the January 15, 2025 hearing.  *See* Mot. for Contempt, No. 24-22606-cgm, ECF No. 44.  At the December 4, 2024 hearing, the UST explained that Mr. Fryburg failed to appear for scheduled Court hearings twice as of that date: Mr. Fryburg failed to appear for the confirmation hearing initially scheduled for September 11, 2024; then, Mr. Fryburg failed to appear for the adjourned Confirmation Hearing scheduled for October 9, 2024.  *See* Transcript of Hearing Held on 12/4/24, No. 24-22606-cgm, ECF No. 45.  The Court's records confirm that Mr. Fryburg did not even register— let alone appear—for the September 11, 2024 hearing, the adjourned Confirmation Hearing on October 9, 2024, or the January 15, 2025 hearing.  When the Court adjourned the matter on the Order to Show Cause to January 15, 2025, Mr. Fryburg

violated the Order to Show Cause when he did not appear on January 15, 2025. Mr. Fryburg also clearly violated the Judge's oral order at the December 4, 2024 hearing when he did not appear for the hearing on January 15, 2025. Mr. Fryburg, as a member of the bar and officer of the court, is responsible for strictly adhering to Court orders. *See, e.g.*, Syntel Sterline Best Shores Mauritius Ltd. v. TriZetto Grp., 328 F.R.D. 100, 103 (S.D.N.Y. 2018).

### C. Mr. Fryburg Has Not Diligently Attempted to Comply with the Order to Show Cause or the Court's Oral Order in a Reasonable Manner.

The party in contempt must not have diligently attempted to comply with the court's order in a reasonable manner. *See In re* Chief Exec. Officers' Clubs, 359 B.R. 527, 535 (2d Cir. 1995) (*citing* New York State NOW v. Terry, 886 F.2d 1339, 1351 (2d Cir.1989)).

The Letter could not possibly be considered a diligent attempt to comply with the Court's orders. Instead, it is an incorrect recitation of the facts and, simply put, an endeavor to shift the blame to the Court, the Chapter 13 Trustee, or the UST for Mr. Fryburg's own, violative conduct. Mr. Fryburg's Letter—filed over two months after the Order to Show Cause was entered and over one month after the Judge adjourned the matter on the Order to Show Cause to the January 15, 2025 hearing date—repeatedly alleges compliance with this Court's orders through his appearance at a hearing on October 10, 2024. There was no hearing on October 10, 2024. The

adjourned Confirmation Hearing was scheduled for October 9, 2024. Mr. Fryburg's Letter complains that he "should have heard back from someone in [the Judge's] chambers about [the Court's] investigation regarding [Mr. Fryburg's] appearance on Oct. 10, 2024." Letter from Marc H. Fryburg, Debtor, to Hon. Cecelia Morris, Judge ¶ 3 (Jan. 21, 2025) (on file with the Court). It is not the Court's duty to relay information to attorneys who fail to appear. It is the attorney's duty to apprise himself of all reasonable information to adequately represent his client. If Mr. Fryburg had merely appeared in Court via Zoom when he was supposed to, there would be no need to apprise himself of the results of an "investigation" directed at himself. In Mr. Fryburg's own words, "[he] should have written this letter sooner, but [he] just now began to understand exactly what is going on . . . ." *Id.* Failing to know "what is going on" in his own client's case is clearly a lack of diligence on Mr. Fryburg's part. If anything, it supplements the grounds for sanctions. The Letter then complains that "Mr. Frost should have known better" when he claimed that Mr. Fryburg did not appear for the adjourned Confirmation Hearing. *Id.* It is not the responsibility of other parties to inform Mr. Fryburg of adjourned hearing dates. It is Mr. Fryburg who should have known that the adjourned Confirmation Hearing was not the same thing as the section 341 meeting of the creditors.

The Opposition does Mr. Fryburg no favors. Instead, it reinforces this Court's belief that Mr. Fryburg should be sanctioned for his contempt of Court. The

Opposition claims Mr. Fryburg "reasonably relied" on an email ("Email") informing Mr. Fryburg that the section 341 meeting of the creditors was scheduled for October 10, 2024. *See* Aff. in Opp. ¶ 3, No. 24-22606-cgm, ECF No. 52. The Email says nothing about the adjourned Confirmation Hearing scheduled for October 9, 2024, and so there is absolutely no basis for his reliance—let alone reasonable reliance—on the Email. No reasonable attorney would read such an Email and conclude that a hearing, rather than a section 341 meeting of the creditors, was being discussed. The Court finds it grossly unpersuasive that an Email directing an attorney's appearance at a section 341 meeting of the creditors could justify that same attorney's nonappearance at a scheduled Court hearing at an earlier date.

## II. Sanctions

Sanctions for civil contempt may "serve either to coerce the contemnor into future compliance with the court's order or to compensate the complainant for losses resulting from the contemnor's past noncompliance." *New York State Nat. Org. for Women v. Terry*, 886 F.2d 1339, 1352 (2d Cir. 1989) (citing *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947)). Where the purpose of contempt is to make a party comply, a court must exercise discretion in determining the proper sanction. *See In re* Chief Exec. Officers Clubs, Inc., 359 B.R. 527, 530. The court must consider the "character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in

bringing about compliance with the court order." *Id.* Where the purpose of contempt is to compensate the complainant, compensation should be awarded for the actual damages incurred. *See In re Haemmerle*, 529 B.R. 17, 26 (Bankr. E.D.N.Y. 2015); *In re Nicholas*, 457 B.R. 202, 224 (Bankr. E.D.N.Y. 2011). Compensatory damages may include "attorneys' fees; litigation costs; travel expenses; other actual losses, such as wages or business income; and possibly emotional distress damages." *In re Haemmerle*, 529 B.R. at 26 (citations omitted). Bankruptcy courts may also impose contempt sanctions in a non-nominal amount for on-going non-compliance with a court's orders. *See In re* Markus, 78 F.4th 554, 562, 570 (2d Cir. 2022) (affirming imposition of "per diem sanctions in the amount of $1,000 per day, for a total of $55,000" and "$36,600 in attorneys' fees" against attorney).

Bankruptcy courts possess inherent discretion to fashion sanctions for civil contempt. *See In re* Sledziejowski, No. 13-22050 (RDD), 2015 WL 2128595, at *5 (Bankr. S.D.N.Y. May 5, 2015) (citing *In re* Ngang Gung Restaurant, 1996 U.S. Dist. LEXIS 18877, at *16 (S.D.N.Y. Dec. 20, 1996) ("It is generally agreed that bankruptcy courts possess the same inherent sanction power that district courts enjoy.")); *see id.* ("Pursuant to this inherent power, courts have broad discretion to fashion appropriate sanctions . . . ."); *see also In re* Chief Exec. Officers' Clubs, 359 B.R. 527, 534 (2d Cir. 1995); Chambers v. Nasco, Inc., 501 U.S. 32, 44–45 (1991)) (noting that bankruptcy courts have fashioned a variety of sanctions that have been

upheld on appeal); *Ex parte* Robinson, 86 U.S. 505, 510 (1874) ("The power to punish for contempt is inherent in all courts; its existence is essential to the preservation of order in judicial proceedings, and to the enforcement of the judgments, orders and writs of the courts and, consequently, to the due administration of justice.").

This discretion includes the imposition of monetary sanctions in the form of attorneys' fees and other continuing monetary penalties on a party while non-compliance continues. *See In re* Covelli, 550 B.R. at 269, 271 (imposing daily monetary penalty on party during non-compliance); *In re* Olsen, 358 B.R. 609, 627–28 (Bankr. S.D.N.Y. 2007) (ordering payment of attorneys' fees expended responding to frivolous motions and for ignoring court order); *In re* Nicholas, 457 B.R. 202, 224, 228 (Bankr. E.D.N.Y. 2011) (holding party in contempt and awarding attorneys' fees and $5,000 in punitive damages after the party commenced an action in state court in knowing violation of a discharge injunction). There is no requirement in the Second Circuit for the violator to have acted willfully to award attorney's fees. *See In re* Eppolito, 583 B.R. 822, 829 (Bankr. S.D.N.Y. 2018).

Bankruptcy Courts also have the inherent power and discretion to impose sanctions on a party's counsel for "misconduct by an attorney that involves that attorneys' violation of a court order." United States v. Seltzer, 227 F.3d 36, 42 (2d Cir. 2000); *In re* Markus, 78 F.4th at 565 ("[B]ankruptcy courts [may] impos[e] non-

nominal civil contempt sanctions pursuant to their inherent authority."); *see also* Palmer v. Simon's Agency Inc., 833 Fed. App'x. 838, 839 (2d Cir. 2020) (holding "courts have the inherent power to sanction attorneys" for "violations of court orders") (quotations omitted). Those sanctions include imposition of attorneys' fees, expenses, and other monetary sanctions while non-compliance with a court order continues. *See In re* Markus, 78 F.4th at 562, 570 (affirming attorneys' fees and daily monetary sanction against attorney during non-compliance); *In re* Lehman Bros., 2013 WL 6283572, at *4–5 (awarding civil contempt sanctions in the form of attorneys' fees and costs); *In re* Stockbridge Funding Corp., 145 B.R. 797, 813 (Bankr. S.D.N.Y. 1992) (imposing monetary sanctions against law firm representing litigants), *aff'd in part, vacated in part*, 158 B.R. 914 (S.D.N.Y. 1993).

According to Mr. Fryburg, he has been paid $0.00 for this case. To the extent Mr. Fryburg has been paid any amounts for his legal services in connection with this case, the Court orders Mr. Fryburg to disgorge any fees received. Any compensation received would far exceed the value of legal services provided by Mr. Fryburg on behalf of Debtor. Mr. Fryburg must submit an affidavit listing any and all attorney's fees incurred in the present case within seven (7) days of the issuance of this ruling. Mr. Fryburg shall return any such fees to the Debtor by cashier's check, bank check, or money order made payable to Debtor by no later than thirty (30) days from the date of this ruling.

Since Mr. Fryburg may not have been paid for his minimal work in this case, disgorging attorney's fees alone will likely not be effective at deterrence. Thus, this Court finds it appropriate to sanction Mr. Fryburg in the amount of $2,100, as previewed at the December 4, 2024 hearing. *See* Transcript of Hearing Held on 12/4/24, No. 24-22606-cgm, ECF No. 45. Mr. Fryburg shall pay such sanctions to the Legal Aid Society of Rockland County by cashier's check, bank check or money order by no later than thirty (30) days from the date of this ruling. Mr. Fryburg shall file an affidavit of compliance with this Court documenting such payment to the Legal Aid Society of Rockland County no later than sixty (60) days from the date of this ruling. Mr. Fryburg shall forward a photocopy of the cashier's check, bank check or money order to the UST and Chapter 13 Trustee, so that the photocopy is received in such offices by no later than ninety (90) days from the date of this ruling.

This ruling and the accompanying order are meant as a lesson for Mr. Fryburg in practicing before the Bankruptcy Court. Any further violation of the Bankruptcy Code or Bankruptcy Rules will result in a reference to the Grievance Committee.

The Court finds that such sanctions are appropriate considering all the facts and circumstances, including as set forth in the Motion for Contempt, the Letter, and the Opposition which demonstrate Mr. Fryburg's blatant disregard for this Court's orders and the letter and spirit of the Bankruptcy Code, Bankruptcy Rules, and Model Rules.


## Conclusion

For the foregoing reasons, the UST's Motion for Contempt is granted and sanctions are imposed as outlined above. The UST shall submit an order granting relief in accordance with this ruling within fourteen (14) days of the issuance of this decision, directly to chambers (via E-Orders). Mr. Fryburg shall submit an affidavit, directly to chambers, listing any and all attorney's fees in this case within seven (7) days of the issuance of this decision. Mr. Fryburg shall file an affidavit of compliance with this Court documenting payment of $2,100 to the Legal Aid Society of Rockland County, at 2 Congers Road, New City, NY 10956, no later than thirty (30) days from the date of this ruling. Mr. Fryburg shall forward a photocopy of the cashier's check, bank check or money order to the UST and Chapter 13 Trustee showing payment of $2,100 to the Legal Aid Society of Rockland County so that the photocopy is received in such offices by no later than ninety (90) days from the date of this ruling.



**Dated: March 14, 2025**
**Poughkeepsie, New York**

/s/ Cecelia G. Morris
_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**